[No. B218306. Second Dist., Div. Eight. Mar. 8, 2011.]

STEVEN CANDARI, Plaintiff and Respondent, v.
LOS ANGELES UNIFIED SCHOOL DISTRICT et al., Defendants and
Appellants.

COUNSEL

Mampre R. Pomakian for Defendants and Appellants.

The Law Offices of Melinda G. Wilson and Melinda G. Wilson for Plaintiff and Respondent.

OPINION

GRIMES, J.—The sole issue presented on appeal is whether the trial court committed error in issuing a peremptory writ of mandate directing defendant and appellant Los Angeles Unified School District Personnel Commission (Commission) to vacate that portion of its administrative order of April 16, 2008, denying backpay to plaintiff and respondent Steven Candari and remanding to the Commission to determine the amount of backpay owed to Candari. We find no error and affirm.

## FACTS

Candari was hired by defendant and appellant Los Angeles Unified School District (LAUSD)[1] in 1997. In 2006, Candari was a tenured or "permanent" carpenter for LAUSD, assigned to the maintenance and operations branch, district 6. Candari also served as a union steward at that time.

On September 13, 2006, Candari took his regular lunch break between 11:30 a.m. and 12:00 p.m. He went to Las Trancas restaurant with two coworkers, William Rios and Ignacio Alcaraz. Candari and Alcaraz ordered food but no beverages, drinking only the water brought to the table by the waitress when they sat down. Rios ordered a bottle of beer with his lunch. He did not like the way it tasted, so he ordered a bottle of Bohemia beer—a brand he knew he liked. He drank that beer with his meal.

Around 11:50 a.m., Lionel Barreda came into the restaurant. Barreda was an area operations supervisor for LAUSD. He saw Candari and Rios, walked up to their table and had a brief conversation with them. Barreda then sat

---

[1] Where appropriate, we will refer to appellants LAUSD and Commission collectively as "Appellants."

down at another table with his wife and two female friends, who had been waiting for him to arrive. Candari and his coworkers left the restaurant just before noon. Candari returned to his work for that day replacing window grilles at Heliotrope Elementary School.

Because he saw two beer bottles on the table where Candari was seated, Barreda called his superior, George Evans, and reported the incident to him. Evans told Barreda to come back to the office immediately so they could discuss the situation. Barreda reported to Evans that he did not see anyone drinking beer, but he did see two, or perhaps three, beer bottles on the table. Evans directed two supervisors to go to where Candari and Rios were working their afternoon shifts and take them to be tested for alcohol.[2]

Candari's supervisor, Trevor Thomas, accompanied by Kirk Encinas, went to see Candari and told him he had to submit to alcohol testing immediately. He denied drinking any alcohol at lunch and refused to be tested. Candari stated he needed to talk to his union representative, but he was unable to reach him by phone after several attempts. Candari did not appear to be under the influence of alcohol in any way. Nevertheless, Thomas and Encinas told Candari to have someone pick him up and go home if he refused to be tested. His wife picked him up, and he was suspended as of the next day.

LAUSD served Candari with a notice of unsatisfactory service, stating the grounds of his suspension and recommendation of dismissal for insubordination, violation of employee ethical rules and appearing for work under the influence of alcohol, all arising from the September 13, 2006 incident. LAUSD thereafter formally terminated Candari from service by letter dated November 15, 2006. Candari appealed his suspension and termination, and an evidentiary hearing was scheduled before a hearing officer.

At the hearing, Candari testified he did not drink any alcohol at lunch, and he believed LAUSD disciplined him differently from the others because a former supervisor, Frank Perez, wanted him fired. Candari testified he

---

[2] The record reflects LAUSD had a "zero tolerance" policy against being on duty or otherwise on any school premises under the influence of alcohol or drugs, but no specific policy against drinking while off duty. The record further indicates that Alcaraz was not subjected to testing or any disciplinary proceedings. Barreda testified he did not know who Alcaraz was and therefore had not mentioned him to Evans. But Candari, Rios and Alcaraz all testified that Barreda knew Alcaraz and had previously worked with him at Bell High School. Rios, who admitted drinking, agreed to a 10-day suspension and drug/alcohol testing.

believed he was entitled to talk to his union representative before being forced to undergo alcohol or drug testing. During the multiple-day hearing, LAUSD asked Candari a limited number of questions regarding any employment he had sought or obtained following his suspension and termination. LAUSD asked if he was presently working and, if so, where and for how much. Candari stated he worked as a dockworker for one to two eight-hour days per week, at the rate of $20 per hour. He explained he had maintained his card (presumably a union card) as a dockworker even while employed at LAUSD and was picking up that work whenever it was available. He also stated that he had not sought other employment. No other evidence was offered by LAUSD about any other employment, other earnings, or the availability of other carpentry jobs comparable to Candari's position with LAUSD.

The hearing officer issued his findings and recommendations indicating there was insufficient evidence supporting a majority of the charges against Candari. He recommended rescission of Candari's dismissal, a 45-day suspension without pay, and reinstatement to service with an award of backpay and benefits, less a credit for any compensation earned by Candari during the relevant period. LAUSD requested reconsideration of the backpay issue but did not offer any new evidence to the hearing officer. While reconsideration of the backpay issue was pending before the hearing officer, the Commission adopted his recommendations to rescind Candari's dismissal, subject to the 45-day suspension without pay, and offered Candari reinstatement.

On February 20, 2008, the hearing officer issued amended findings, maintaining his original recommendation regarding suspension and rescission of the dismissal order but reversing his recommendation on backpay, finding it was unwarranted due to Candari's failure to mitigate. On April 16, 2008, the Commission adopted the hearing officer's amended recommendations denying Candari backpay. Candari filed a petition for a writ of mandate in the superior court. In response, Appellants answered, raising numerous affirmative defenses, including the 10th affirmative defense of failure to mitigate damages.

Following briefing and oral argument, the trial court found that Appellants failed to adequately discharge their burden of proof as to their affirmative defense of Candari's failure to mitigate damages. The court ruled the denial of backpay was not supported by the weight of the evidence and contrary to the general rule of law imposing the burden of proof regarding mitigation on the employer. "The court can find no evidence in the administrative record,

nor is any evidence cited by [LAUSD], to show that other employment as a carpenter was comparable, or substantially similar, to [Candari's] employment as a carpenter." The court granted Candari's petition, entered judgment in his favor on June 18, 2009, and issued a peremptory writ of mandate directing the Commission to vacate that portion of its order denying Candari backpay and remanding to the Commission for a determination of the amount of backpay owing and an order directing that it be paid. This appeal followed.

## DISCUSSION

### 1. *Standard of Review*

Candari filed his petition below pursuant to Code of Civil Procedure section 1094.5, contending the Commission abused its discretion in refusing to award him backpay.[3] Since the Commission's April 16, 2008 administrative order affects a fundamental vested right, the trial court correctly exercised its independent judgment in reviewing the administrative record. (*Davis v. Los Angeles Unified School Dist. Personnel Com.* (2007) 152 Cal.App.4th 1122, 1130 [62 Cal.Rptr.3d 69] (*Davis*) [agency decision impacting employee's fundamental vested right in his or her job requires exercise of trial court's independent review].)

The independent judgment test required the trial court to not only examine the administrative record for errors of law, but also exercise its independent judgment upon the evidence in a limited trial de novo. (*Bixby v. Pierno* (1971) 4 Cal.3d 130, 143 [93 Cal.Rptr. 234, 481 P.2d 242] (*Bixby*).) The trial court was permitted to draw its own reasonable inferences from the evidence and make its own credibility determinations. (*Morrison v. Housing Authority of the City of Los Angeles Bd. of Comrs.* (2003) 107 Cal.App.4th 860, 868 [132 Cal.Rptr.2d 453] (*Morrison*).) At the same time, it had to afford a strong presumption of correctness to the administrative findings and require the challenging party to demonstrate that such findings were contrary to the weight of the evidence. (*Fukuda v. City of Los Angeles* (1999) 20 Cal.4th 805, 817 [85 Cal.Rptr.2d 696, 977 P.2d 693].)

Our task is to review the record and determine whether the *trial court's* findings (not the administrative agency findings) are supported by substantial

---

[3] The original petition also contained allegations challenging the propriety of the length of the suspension imposed, but that portion of the petition was denied and that aspect of the court's ruling has not been challenged on appeal.

evidence. (*Bixby, supra*, 4 Cal.3d at p. 143, fn. 10; accord, *Davis, supra*, 152 Cal.App.4th at pp. 1130–1131; *Kazensky v. City of Merced* (1998) 65 Cal.App.4th 44, 52 [76 Cal.Rptr.2d 356] [where superior court required to exercise independent review of administrative record, " 'the scope of review on appeal is limited' "].) We resolve all evidentiary conflicts and draw all legitimate and reasonable inferences in favor of the trial court's decision. (*Valiyee v. Department of Motor Vehicles* (1999) 74 Cal.App.4th 1026, 1031 [88 Cal.Rptr.2d 508].) "Where the evidence supports more than one reasonable inference, we are not at liberty to substitute our deductions for those of the trial court." (*Morrison, supra*, 107 Cal.App.4th at p. 868.)

### 2. *Analysis*

In asserting trial court error, LAUSD and the Commission rely primarily on two premises, both of which we find unpersuasive. Appellants contend that both section 45307 of the Education Code (hereafter section 45307) and Commission rule 904P contain permissive language providing that if an employee's appeal of disciplinary action is sustained by the Commission, an award of backpay "may" be made, with no language mandating an award following reinstatement. Appellants argue this language clearly evinces the Commission has substantial discretion in determining whether or not an award of backpay is appropriate and, further, that there is nothing in either section 45307 or Commission rule 904P that imposes a burden on LAUSD to establish mitigation. Indeed, they contend the law imposes a duty on the employee to mitigate damages, which Candari failed to do. As such, Appellants argue the Commission's decision to deny backpay was well within its discretion and the trial court had no grounds to disturb that determination.

Section 45307 provides in pertinent part: "If the commission sustains the employee, it may order paid all or part of his full compensation from the time of suspension, demotion, or dismissal, and it shall order his reinstatement upon such terms and conditions as it may determine appropriate." The Commission's rules pertaining to disciplinary proceedings contain substantially similar language: "If the [employee's] appeal is sustained, the Commission shall order the reinstatement of the [employee] and may order payment of all or part of [the employee's] full compensation from the date of suspension, demotion, dismissal, or resignation." (Com. rule 904P.)

Appellants are correct that section 45307 and Commission rule 904P contain the word "may" with respect to the awarding of backpay, denoting discretion. However, the discretionary authority enjoyed by the Commission is not absolute. The exercise of discretion by an administrative agency or board must be impartial and " 'guided and controlled . . . by fixed legal principles.' " (*Harris v. Alcoholic Bev. etc. Appeals Bd.* (1965) 62 Cal.2d 589,

594 [43 Cal.Rptr. 633, 400 P.2d 745].) The Commission was required to act in accordance with the legal principles applicable to the relevant facts in deciding the issue before it.

Appellants are also correct that both public and private employees faced with a wrongful discharge have a legal duty to mitigate damages while pursuing remedies against their former employer. (*California School Employees Assn. v. Personnel Commission* (1973) 30 Cal.App.3d 241, 245, 249 [106 Cal.Rptr. 283] (*CSEA*).) However, neither this general principle of law nor the permissive language of section 45307 and Commission rule 904P does anything to alter the well-established law requiring an employer to affirmatively prove failure to mitigate as an affirmative defense.

█ As the Supreme Court has explained, the burden to prove failure to mitigate damages lies squarely with the employer: "The general rule is that the measure of recovery by a wrongfully discharged employee is the amount of salary agreed upon for the period of service, less the amount *which the employer affirmatively proves* the employee has earned or with reasonable effort might have earned from other employment. [Citations.] [Fn. omitted.] However, *before* projected earnings from other employment opportunities not sought or accepted by the discharged employee can be applied in mitigation, *the employer must show* that the other employment was comparable, or substantially similar, to that of which the employee has been deprived; the employee's rejection of or failure to seek other available employment of a different or inferior kind may not be resorted to in order to mitigate damages. [Citations.]" (*Parker v. Twentieth Century-Fox Film Corp.* (1970) 3 Cal.3d 176, 181–182 [89 Cal.Rptr. 737, 474 P.2d 689], italics added (*Parker*); accord, *Davis, supra*, 152 Cal.App.4th at pp. 1140–1141; *Hope v. California Youth Authority* (2005) 134 Cal.App.4th 577, 595 [36 Cal.Rptr.3d 154].)

Appellants attempt to distinguish *Parker* by stating that it arose from a private employment contract and was not a case involving the discharge of a public school employee implicating section 45307. Appellants rely instead on *Davis*, arguing it is more directly on point. It is true that *Davis*, like this case, involved a discharged LAUSD employee and a decision by the Commission denying an award of full backpay following an order of reinstatement. (*Davis, supra*, 152 Cal.App.4th at pp. 1127–1129.) However, section 45307 was not even mentioned by our colleagues in Division One in discussing the backpay issue.[4] (*Davis*, at pp. 1133–1140.) *Davis* correctly followed *Parker* in determining that LAUSD, as the employer, bore the burden of proof on its mitigation defense regardless of section 45307. (*Davis*, at pp. 1140–1141.)

---

[4] The statute is mentioned only briefly with respect to a separate issue not pertinent to our discussion. (*Davis, supra*, 152 Cal.App.4th at pp. 1131–1132.)

Appellants also point to the fact that a showing of comparable available work was not required or discussed in *Davis* and that the focus was instead on the fact the employee had not worked at all due to a disability, thereby eliminating any need for a showing of comparable employment opportunities. They argue Candari made a similar "departure" from the workforce by choosing not to seek alternative employment, so LAUSD was not required to prove the availability of comparable or substantially similar carpentry jobs.

We disagree. The court in *Davis* did not dispense with the requirement that an employer must establish the availability of comparable work to prove the affirmative defense of failure to mitigate damages. *Davis* presented a distinct set of facts. The employee in *Davis* had been placed on disability by his doctor *before* being demoted and eventually terminated. (*Davis, supra,* 152 Cal.App.4th at pp. 1127–1128.) In addition to challenging his discipline and dismissal, the employee filed a worker's compensation claim. In the workers' compensation proceeding, it was determined the employee's disability was not work related ("nonindustrial"). (*Id.* at p. 1127.) After receiving his reinstatement order, the employee did not obtain a release from his doctor stating he was able to work in any capacity. (*Id.* at p. 1129.)

By affirmatively demonstrating these facts, the employer in *Davis* established that the employee did not work, and could not have worked, due solely to a disability that *predated* the allegedly wrongful demotion and termination. As such, under traditional causation principles, the employer could not be held responsible for backpay because the employee would have sustained the loss due to his nonindustrial disability even in the absence of any wrongful termination. (*Davis, supra,* 152 Cal.App.4th at p. 1141.) On these unique facts, the availability of comparable employment was rendered moot. Nothing in *Davis* suggests the discretionary language of section 45307 somehow supplants the long-standing legal principle that an employer bears the burden of proof on the affirmative defense of mitigation or that available comparable employment is not generally required to establish that defense.

*Martin v. Santa Clara Unified School Dist.* (2002) 102 Cal.App.4th 241 [125 Cal.Rptr.2d 337] (*Martin*), also cited by Appellants, is similarly unavailing. There, a teacher was placed on compulsory leave following an arrest on drug-related charges. (*Id.* at p. 247.) The teacher eventually completed a drug diversion program, and the charges against her were dismissed. She sought reinstatement and backpay, which were denied. (*Id.* at p. 248.) The trial court issued a writ directing that backpay be awarded. (*Ibid.*)

The Sixth Appellate District reversed. The *Martin* court, consistent with *Parker*, held the employer had introduced sufficient evidence in support of its mitigation defense, including evidence establishing the existence of

comparable teaching positions, that the teacher had maintained a valid teaching credential during the period of leave, and that she conceded she was aware of a shortage of teachers but had nonetheless not sought any teaching job because she assumed she would not be hired with charges pending against her. (*Martin, supra*, 102 Cal.App.4th at pp. 255–256.) Accordingly, the court remanded to the trial court, explaining: "The *District submitted evidence showing the prevailing salaries for comparable positions* in other school districts in the area during the pertinent years. Because [the teacher] did not exercise due diligence in seeking comparable employment after being placed on compulsory leave, the award of backpay must be reduced by an amount she reasonably could have earned . . . ." (*Id.* at p. 257, italics added; see also *CSEA, supra*, 30 Cal.App.3d 241 [denial of backpay affirmed where school district established failure to mitigate by introducing evidence of availability of multiple comparable bus driver positions and failure of employee to make any reasonable effort to secure such positions].)

The controlling law is clear. The employer must demonstrate the availability of comparable or substantially similar positions *before* projected earnings of alternative employment opportunities *not sought* by the discharged employee are properly considered. (*Parker, supra*, 3 Cal.3d at pp. 181–182; *Davis, supra*, 152 Cal.App.4th at pp. 1140–1141; *Martin, supra*, 102 Cal.App.4th at p. 255; *CSEA, supra*, 30 Cal.App.3d at pp. 249–250.) Appellants did not discharge their burden on their affirmative defense by merely showing Candari had "not sought" other carpentry opportunities. That evidence would have become legally relevant only if LAUSD had shown there were comparable carpentry opportunities available.

We reject Appellants' suggestion the one-word admission by Candari that he did not seek other employment was sufficient evidence of a "voluntary departure" from the workforce akin to the medical disability established in *Davis*. LAUSD made no effort to support that admission with additional evidence relevant to a failure to mitigate damages. The only material evidence in the record on this issue was that Candari was working a part-time position as a dockworker. The reasonable inference is that Candari was willing and able to work and was not intentionally choosing to simply "sit idle" while he challenged his termination, despite Appellants' assertion to the contrary. The trial court correctly determined that, under the applicable law, LAUSD and the Commission failed to discharge their burden on the mitigation defense and that backpay should therefore have been ordered. Because the record supports that determination, we will not disturb it.

## DISPOSITION

The judgment is affirmed. Respondent shall recover his costs on appeal.

Bigelow, P. J., and Rubin, J., concurred.