Filed 7/15/13  In re Michelle T. CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| In re MICHELLE T., a Person Coming Under the Juvenile Court Law. | |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MIGUEL T.,<br><br>    Defendant and Appellant. | D063291<br><br>(Super. Ct. No. CJ1101B) |

APPEAL from findings and orders of the Superior Court of San Diego County,

Laura J. Birkmeyer, Judge.  Affirmed.

The Law Office of Richard L. Knight and Richard L. Knight, under appointment

by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips and Paula J. Roach,

Deputy County Counsel, for Plaintiff and Respondent.

Miguel T. appeals findings and orders removing his daughter Michelle T. from her mother's custody at a dispositional hearing under Welfare and Institutions Code section 361, subdivision (c)(1).[1] We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Miguel is the father of four-year-old Michelle and the stepfather of X.C., who is now 12 years old. The children's mother is Miguel's wife, Janet G. Miguel is a registered sex offender. At some point in time (not specified in the record), Miguel was convicted of lewd and lascivious acts with his former stepdaughter, who was under the age of 14 years at the time. He served three years in prison and was on probation for three years.

Janet was aware of Miguel's conviction and status as a registered sex offender when she began dating him. He was on probation at the time. Miguel told Janet that he resisted his former stepdaughter's advances but she insisted on having a relationship with him. Janet allowed three-year-old Michelle to sleep between her and Miguel in their bed.

In October 2012, X.C. disclosed that for the past two years, Miguel came into her bedroom two or three times a week at night when he thought she was asleep. He touched her chest and inner thigh area underneath her clothing. Miguel had removed a part of her bedroom doorjamb, making it impossible for X.C. to lock her door. When she went to bed, X.C. wore a bra, underwear, shirt, shorts, sweatshirt and sweatpants. She put towels between the door and the doorframe to keep it closed. X.C. began cutting herself on her

---

[1]    Unless otherwise indicated, further statutory references are to the Welfare and Institutions Code.

wrists. She told her friends that Miguel held her tight and kissed her. She was afraid of him.

Miguel failed a polygraph exam and was arrested and jailed.

Janet did not believe X.C. She said X.C. had had nightmares that someone was touching her since she was seven years old. Janet was not concerned about X.C.'s and Michelle's safety because she did not believe that Miguel would touch them inappropriately. Janet insisted the molestation could not have happened.

Police detectives instructed Janet not to discuss the allegations with X.C. They said she should simply support her daughter and take her for a forensic interview the following day. When Janet and X.C. arrived for the forensic interview, Janet informed the detective that X.C. now believed the touching was all a dream. X.C. wrote a letter to the detective stating it was all a nightmare. She provided information about Miguel's positive attributes and regretted he had been arrested. During the forensic interview, X.C. said her mother told her that she used to have nightmares about being touched and said she should ask the interviewer for therapy.

X.C.'s father, Carlos C., first learned of Miguel's status as a registered sex offender four years earlier. He tried to notify "Megan's Law" but never received a response. He expressed his concerns about Miguel to Janet, and asked X.C. if anyone was inappropriately touching her. She would not confirm or deny anything. When asked why he did not seek to gain custody of X.C., Carlos said, "I dropped the ball."

3

The San Diego County Health and Human Services Agency (Agency) filed a petition under section 300, subdivision (d), alleging Michelle had suffered, or there was a substantial risk she would be sexually abused by a parent or member of her household.[2] Michelle was detained with a maternal aunt.

Janet attended parenting education classes and individual therapy. She was receptive to services. Her therapist reported that Janet acknowledged the protective issue and was lessening her level of denial, although she continued to express doubts about X.C.'s statements.

The jurisdictional and dispositional hearing was held on December 19, 2012. The court admitted the Agency's reports in evidence. Janet and Miguel did not present affirmative evidence or cross-examine the social worker. The juvenile court sustained the petition filed on Michelle's behalf, removed her from the custody of her parents and ordered a plan of family reunification services.

DISCUSSION

A

*Summary of Argument*

Miguel contends the juvenile court's order removing Michelle from her mother's care is not supported by substantial evidence. He argues there is insufficient evidence of detriment because he was in jail and would likely be incarcerated for many years.

---

2      The Agency also filed a petition on behalf of X.C., who was adjudicated a dependent of the juvenile court and placed in the care of her father Carlos under a plan of family reunification services. Carlos and Janet also have a teenage son who denied abuse and remained in Janet's custody.

Further, by the time of the dispositional hearing, Janet said she believed X.C. and had become a protective parent. Miguel also asserts the record contains no evidence to show he would sexually abuse his own biological daughter or that Michelle suffered emotional harm as a result of his sexual abuse of X.C., therefore there is no commensurate risk to Michelle in her mother's care. He contends the court's order removing Michelle from Janet's care was capricious and arbitrary because the court placed X.C. with her father, and Michelle with her maternal aunt, who each knew about Miguel's status as a registered sex offender and did nothing to protect the children.

B

*Statement of Law and Standard of Review*

A dependent child may not be taken from the physical custody of the parent under section 361, unless the court finds there is clear and convincing evidence that there is or would be a substantial danger to the child's physical health, safety, protection, or physical or emotional well-being if returned home, and that there are no reasonable means to protect the child's physical health without removing the child. (§ 361, subd. (c)(1).)

In determining whether a child may be safely maintained in the parent's physical custody, the juvenile court may consider the parent's past conduct and current circumstances, and the parent's response to the conditions that gave rise to juvenile court intervention. (*In re Cole C*. (2009) 174 Cal.App.4th 900, 917; see *In re Esmeralda B.* (1992) 11 Cal.App.4th 1036, 1043-1044.) The juvenile court also considers whether there are any reasonable protective measures and services that can be put into place to

5

prevent the child's removal from the parent's physical custody. (§ 361, subd. (c)(1); see §§ 202, subd. (a), 16500.5, 16501, 16501.1.)

In reviewing the court's findings and orders under section 361, subdivision (c), we employ the substantial evidence test, bearing in mind, however, the heightened burden of proof. (*In re Kristin H.* (1996) 46 Cal.App.4th 1635, 1654.) We review the trial court's findings to determine whether there is substantial evidence in the record that supports the findings. We do not reweigh the evidence, evaluate the credibility of witnesses or resolve evidentiary conflicts. The appellant has the burden to demonstrate there is no evidence of a sufficiently substantial nature to support the findings or orders. (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 228.) We draw all legitimate and reasonable inferences in support of the judgment. (*Candari v. Los Angeles Unified School Dist.* (2011) 193 Cal.App.4th 402, 408.)

C

*There Is Substantial Evidence to Support the Detriment Finding*

The court could draw the reasonable inference that without removal from Janet's custody, Michelle would be at continued risk of harm because Janet did not understand the dynamics of sexual abuse and was unable to recognize the risk to her children, not merely from Miguel but from any other potentially abusive individual. The record shows that Janet knew Miguel had been convicted of sexually abusing a former stepdaughter when she entered into a relationship with him. Janet thought it was appropriate to have Michelle sleep in the same bed with her and Miguel, who was a registered sex offender. Janet was aware of X.C.'s nightmares about being touched. X.C.'s nightmares began

6

when she was approximately seven years old, shortly after Janet became involved with Miguel. Janet also knew that Miguel had removed part of the doorframe from X.C.'s bedroom, and the door would not lock. Yet she continued to insist Miguel could not have abused X.C. Janet did not believe X.C. after she disclosed Miguel was touching her. She disregarded detectives' instructions not to talk to X.C. about the abuse. Instead, Janet insisted X.C. was suffering from nightmares, undermining X.C.'s emotional security. According to her therapist, to become a protective parent, Janet needed to develop an understanding of child developmental stages, learn and enact protective skills, demonstrate knowledge of warning signs of sexual abuse and learn to choose safe relationships that do not place children at risk. She had not attained those goals by the time of the dispositional hearing.

The record does not support Miguel's assertion that prior to the dispositional hearing, Janet said she believed X.C. The record shows that Janet said if X.C. was alleging sexual abuse she needed to believe her daughter, but it was difficult to believe that her husband would sexually abuse her daughter. A week before the dispositional hearing, Janet's therapist said Janet still had doubts about whether the abuse occurred. Thus, we are not persuaded by Miguel's contention there was no protective issue at the time of the dispositional hearing.

We reject Miguel's argument the juvenile court's detriment finding was arbitrary because both Michelle and X.C. were placed with relatives who were aware of Miguel's prior sexual abuse conviction and failed to protect the children. Unlike Janet, the children's relatives were not in an enmeshed relationship with Miguel and were not responsible for placing them at risk. X.C.'s father immediately believed his daughter's statements and regretted he had not done more to protect her. There is nothing in the record to indicate the maternal aunt was unable to protect Michelle and meet her needs for security and safety. The juvenile court may consider the parent's response to the conditions that gave rise to juvenile court intervention. (*In re Cole C.*, *supra*, 174 Cal.App.4th at p. 917.) Janet's circumstances are not comparable to those of her sister and former husband.

We also reject Miguel's argument that because he showed a pattern of sexually abusing his young stepdaughters, the juvenile court should have concluded that his biological daughter was not at risk in her mother's custody. The juvenile court correctly dismissed the argument there was a "biological boundary" that would prevent Miguel from sexually abusing his own daughter. Aberrant sexual behavior by a parent places the victim's siblings at risk of aberrant sexual behavior. (*In re P.A.* (2006) 144 Cal.App.4th 1339, 1347.) "The juvenile court need not compare relative risks to assume jurisdiction over all the children of a sexual abuser, especially when the abuse was . . . severe and prolonged . . . ." (*In re I.J.* (2013) 56 Cal.4th 766, 780.)

8

Here, Miguel's abuse of his former stepdaughter was sufficiently severe to warrant a three-year prison term and his abuse of X.C. occurred two or three times a week for more than two years. Thus, Miguel's pattern of sexually abusing young girls was both severe and prolonged. Janet's lack of awareness about the dynamics of sexual abuse created the opportunity for Miguel to sexually abuse X.C. and to potentially abuse Michelle. Janet did not respond to X.C.'s disclosures as a protective parent and was unable to place her children's needs for physical and emotional safety and protection above her own interests in her relationship with Miguel. The record permits the reasonable inference that because Janet did not recognize even obvious warnings of risk of sexual abuse, there would be a substantial danger of harm to Michelle were she to remain in her mother's care. Thus, there is substantial evidence to support the juvenile court's finding that Michelle could not safely be maintained in Janet's care. (§ 361, subd. (c)(1).)

## DISPOSITION

The findings and orders are affirmed.

IRION, J.

WE CONCUR:

BENKE, Acting P. J.

McINTYRE, J.

9