Filed 2/10/15  In re D.K. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re D.K., a Person Coming Under the Juvenile Court Law. | D066799 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. J519009C) |
| v. | |
| DEANDRE K., | |
| Defendant and Appellant. | |

APPEAL from findings and orders of the Superior Court of San Diego County,
Kenneth J. Medel, Judge.  Affirmed.


Michele Anne Cella, under appointment by the Court of Appeal, for Defendant
and Appellant.


Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County
Counsel, and Dana C. Shoffner, Deputy County Counsel, for Plaintiff and Respondent.

DeAndre K. appeals findings and orders removing his daughter from her mother's custody under Welfare and Institutions Code section 361, subdivision (c)(1)[1] at the disposition hearing. We affirm with directions.

FACTUAL AND PROCEDURAL BACKGROUND

D.K. is the three-year-old daughter of DeAndre K. and E.W. (together, the parents). In addition to D.K., E.W. has two older daughters, seven-year-old N.O. and five-year-old K.O.[2] In June 2014, the San Diego County Health and Human Services Agency (Agency) detained D.K. and her sisters (together, the children) in protective custody and filed petitions alleging the children were at substantial risk of serious harm because of their exposure to the parents' ongoing violent confrontations, including a current altercation in which E.W. was injured. (§ 300, subd. (b).)

The Agency documented 10 incidents of domestic violence involving the parents. In December 2010, DeAndre was arrested for threatening the maternal grandfather with a knife while the two older children were present. In June 2011, DeAndre was arrested for pushing E.W., who was pregnant, against a vending machine and not allowing her to leave. In August 2012, E.W. ripped DeAndre's shirt and hit him in the head several times in D.K.'s presence.

---

[1] All further statutory references are to the Welfare and Institutions Code.

[2] This appeal concerns only D.K. The juvenile court placed N.O. and K.O. with their father and dismissed their dependency cases. Because N.O. and K.O. provided information about DeAndre's and E.W.'s pattern of domestic violence to the social worker, we include their background information in this opinion.

In September 2012, DeAndre was arrested after he pushed E.W. into a door and threw her to the ground, injuring her. Two of the children were present during this altercation. The following week E.W. was arrested after she slapped DeAndre across the face in public.

In August 2013, E.W. and DeAndre were arguing while DeAndre was driving on a freeway. D.K. was present. DeAndre started speeding, attaining speeds of more than 100 miles per hour. He almost hit a truck. DeAndre exited the freeway and stopped in an alley. E.W. left the vehicle with D.K. DeAndre drove through the alley, hitting items, and turned the car toward E.W. and D.K. E.W. ran and called the police. She walked with her daughter until she found their vehicle parked on a street. DeAndre drove up with a girlfriend. He tried to shove E.W. out of the driver's seat. When she left the car, he pushed her back into it and yanked her scarf from her head. E.W. told police she did not want to have anything more to do with DeAndre.

Finally, in June 2014, DeAndre was arrested after he battered E.W., who was injured on both forearms and her neck. K.O. witnessed the incident. The two other children were in another room. E.W. and DeAndre told police E.W. fell in the shower and injured herself. K.O told the police officer her mother was crying because DeAndre hurt her.

When interviewed by a social worker, K.O. said the parents were "always fighting, pushing and punching." She said DeAndre and E.W. hit them with a belt and a hangar on the arm. She denied she was bruised or marked as a result.

3

N.O. told a social worker that her mother and DeAndre always fought. He had punched her mother in the lip, making it bloody. Her mother had two scars from his physical assaults. N.O. said the parents did not hit her but they hit her younger sisters with their hand, a belt and a hangar.

When questioned about the June 2014 incident, E.W. told the social worker she slipped in the shower and hurt herself. She denied any domestic violence, saying "all couples have arguments." E.W. was not willing to separate from DeAndre, obtain a restraining order or participate in voluntary services. She denied hitting the children. E.W. tested positive for amphetamine and marijuana, and admitted she had used methamphetamine in the past, starting at age 15. She also acknowledged using marijuana every day.

DeAndre said E.W. slipped in the shower. He refused to discuss other incidents of domestic violence, saying they occurred a long time ago. He acknowledged daily use of marijuana. DeAndre denied hitting the children. He was not willing to separate from E.W., obtain a restraining order or participate in voluntary services. He tested positive for amphetamine and marijuana.

In August, E.W. told a social worker she was no longer in a relationship with DeAndre. She did not have a place to live and had no income. The social worker gave her referrals for shelters. DeAndre told the social worker he and E.W. separated after their attorneys told them it would be better for them and the children if they did so.

The jurisdiction and disposition hearing was held on August 22, 2014. The court admitted the Agency's reports in evidence and heard testimony from the social worker

4

and E.W. After the court denied DeAndre's request for a new attorney, DeAndre left the courtroom and did not return.

The Agency reported that two-year-old D.K. was diagnosed with adjustment disorder with anxiety. She was hitting, biting, not sleeping well and not listening to direction. D.K. had minor asthma attacks. E.W. was consistently visiting D.K.

The social worker testified E.W. was attending a domestic violence program with positive reports. She had yet to enroll in a parenting class or participate in a substance abuse assessment. E.W. was working to stabilize her living situation. The parents reported they were separated. DeAndre was enrolled in a domestic violence group. His visits with D.K. were positive.

E.W. asked the court to place the children with her. She testified the previous evening, a friend offered to let her and the children stay in a bedroom in her home. E.W. did not qualify for several of the shelters the social worker had recommended because she did not have her children in her care. Another shelter was not taking any more applications for its waiting list. E.W. said she would start a full-time job the following week. She was setting up the services the social worker recommended but had not yet received a referral for a substance abuse assessment.

The court, noting that the parents gave inconsistent reports about the latest incident of domestic violence and that the other incidents were "too numerous to repeat," found that the parents' denials of domestic violence were not credible and sustained the jurisdictional allegations under section 300, subdivision (b) by clear and convincing evidence. In discussing the protective risks to D.K., the court found that the parents

5

needed to address their violent and volatile behaviors in order for D.K. to have a chance for a healthy upbringing. In addition, the parents' positive drug tests also presented a protective risk. The court removed D.K. from the physical custody of E.W. and DeAndre[3] and ordered a plan of reunification services.

DISCUSSION

DeAndre contends there is not substantial evidence to support the order removing D.K. from E.W.'s care[4] because the court did not consider reasonable protective measures to prevent removal such as keeping E.W.'s address confidential from him, and ordering supervised visitation and other services, including unannounced visits by the social worker. DeAndre argues the court did not make the required factual findings on the record.

A dependent child may not be taken from the physical custody of the parent under section 361 unless the court finds there is clear and convincing evidence that there is or would be a substantial danger to the child's physical health, safety, protection, or physical

[3] The court's minute order states: "There is clear and convincing evidence the child [D.K.] should be removed from the custody of mother pursuant to Section 361[, subd. ](c)." In its oral pronouncement, the court found "by clear and convincing evidence that removal of the children [*sic*] from both Mr. [K.] and Ms. [W.], the mother, is appropriate under . . . section 361[, subd. ](c) . . . ."
Where there is a discrepancy between the oral pronouncement as reflected in the reporter's transcript and the minute order contained in the clerk's transcript, the oral pronouncement controls; courts presume any inconsistency is the result of clerical error and rely upon the oral pronouncement contained in the reporter's transcript. (*People v. Mesa* (1975) 14 Cal.3d 466, 471; *People v. Crenshaw* (1992) 9 Cal.App.4th 1403, 1415-1416.)

[4] DeAndre does not contend the court erred in removing D.K. from his custody. E.W. does not appeal the order removing D.K. from her custody.

6

or emotional well-being if returned home, and that there are no reasonable means to protect the child's physical health without removing the child. (§ 361, subd. (c)(1).) The court shall state the facts on which the decision to remove the child is based. (*Id*., subd. (d).)

In reviewing the court's findings and orders under section 361, subdivision (c), we employ the substantial evidence test, bearing in mind, however, the heightened burden of proof. (*In re Kristin H.* (1996) 46 Cal.App.4th 1635, 1654.) We do not reweigh the evidence, evaluate the credibility of witnesses or resolve evidentiary conflicts. The appellant has the burden to demonstrate there is no evidence of a sufficiently substantial nature to support the findings or orders. (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 228.) We draw all legitimate and reasonable inferences in support of the judgment. (*Candari v. Los Angeles Unified School Dist*. (2011) 193 Cal.App.4th 402, 408.)

We are not persuaded by DeAndre's claim reversal is required because the court did not make the findings on the record as required under section 361, subdivision (d). DeAndre implicitly acknowledges there is substantial evidence to support a finding there would be a substantial danger to the child's physical health, safety, protection, or physical or emotional well-being if returned home. The record shows that the court identified the protective risks to D.K. as domestic violence and substance abuse, and discussed their need to change their behaviors to mitigate the risks to D.K. The record clearly shows the parents refused to acknowledge their many incidents of domestic violence. E.W. and DeAndre initially refused to take any steps to ameliorate the problem, including seeking a restraining order.

7

Further, in arguing that a confidential placement with protective services would protect D.K. if placed with her mother, DeAndre focuses only on himself as the more violent perpetrator in many of the domestic violence incidents between himself and E.W. However, as the court's remarks make clear, it was not only concerned about DeAndre's violent behaviors, but also about the parents' positive drug tests and E.W.'s own aggressive behaviors. We also note that despite the positive steps E.W. was taking to stabilize her circumstances, she had not yet completed a substance abuse assessment and any recommended substance abuse treatment, and she was not yet in a position to offer a stable, secure home to D.K. In addition, the court had determined the parents were not credible and could reasonably reject the assertion D.K. would be safe in her mother's care at a confidential location because the parents were no longer together.

DeAndre's reliance on *In re Jeanette S*. (1979) 94 Cal.App.3d 52 and *In re Ashly F*. (2014) 225 Cal.App.4th 803 do not assist him here. *In re Jeanette S*. was decided 36 years ago under a different statutory scheme that did not recognize, as we do today, the extent of the child's interest in living free from abuse and neglect and from significant risk factors underlying child abuse and neglect. (§ 300.2 [purpose of chapter is to provide maximum safety and protection for children who are currently being abused or neglected, and to ensure the safety, protection and well-being of children who are at risk of harm], added by Stats. 1996, ch. 1084, § 2; see also *In re Dakota H*., *supra*, 132 Cal.App.4th at p. 223 [recognizing that children have interests independent from the interests of their parents].)

This case is also significantly different from *In re Ashly F*. In that case, the child welfare agency did not discuss any reasonable efforts to prevent removal of the children from their home and the court did not state the facts supporting its conclusion on the record. (*In re Ashly F*., *supra*, 225 Cal.App.4th at pp. 809-811.) Here, the record shows the Agency offered preplacement preventive services to E.W., including a domestic violence program, parenting classes, substance abuse screening and random drug testing. Before initiating dependency proceedings, the social worker offered the parents voluntary services and tried to convince each parent to obtain a restraining order. In its disposition report, the Agency reported that it had conducted a home safety assessment and had concluded that D.K. could not safely remain in her mother's care because E.W. denied the allegations of domestic violence and was not honest about her substance abuse issues. Unlike *In re Ashly F*., the court adopted the Agency's recommendations for removal and made the required factual findings on the record.

We conclude the court did not err when it found there would be a substantial danger to the child's physical health, safety, protection, or physical or emotional well-being if returned home, and there were no reasonable means to protect the child's physical health without removing the child from the parents' custody. (§ 361, subd. (c)(1).) The record shows the court made the required factual findings on the record. (*Id.*, subd. (d).)

DISPOSITION

The findings and orders are affirmed.  The court is directed to modify its disposition order nunc pro tunc to reflect that D.K. has been removed from the custody of her father, as well as her mother.

HUFFMAN, Acting P. J.

WE CONCUR:


McINTYRE, J.


IRION, J.