Filed 9/18/15  In re R.C. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

### COURT OF APPEAL, FOURTH APPELLATE DISTRICT

### DIVISION ONE

### STATE OF CALIFORNIA

| | |
|---|---|
| In re R.C., a Person Coming Under the Juvenile Court Law. | |
| | D067910 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. CJ1206) |
| v. | |
| C.G., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Ronald L. Johnson, Judge.  Affirmed.

Suzanne Davidson, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Patrice Plattner-Grainger, Deputy County Counsel, for Plaintiff and Respondent.

C.G. appeals an order removing her daughter, R.C., from her custody under Welfare and Institutions Code section 361, subdivision (c)(1).[1]  We affirm.

---

[1]     Further statutory references are to the Welfare and Institutions Code.

FACTUAL AND PROCEDURAL BACKGROUND

C.G. is the mother of R.C. (the baby), who was born in August 2014.[2] When R.C. was born, hospital staff was concerned about C.G.'s ability to care for her daughter. Staff noted that C.G. had a history of bipolar disorder or another undiagnosed psychiatric disorder, and low cognitive capacity. C.G. was homeless. Nurses gave multiple safety instructions to C.G. after she covered the baby's head with a blanket; did not respond when the baby gagged and spit up while lying on her back; fell asleep while feeding the baby; and did not remember to feed the baby during the night. A physician recommended that C.G. undergo a psychiatric evaluation. The hospital contacted the San Diego County Health and Human Services Agency (the Agency). The Agency placed a hospital hold on R.C., but determined the referral was unfounded. The baby was released to C.G.

In November 2014, the Agency received a referral alleging C.G. was neglecting R.C. by leaving her in the care of drug dealers, and R.C. was dirty and inappropriately dressed for the weather. In December, the Agency received another referral alleging a friend of the mother's was smoking methamphetamine while holding R.C. and almost hit the baby with a hot methamphetamine pipe.

On December 22, while the Agency's investigations into the two earlier referrals were pending, C.G. left the baby in the care of a friend for two or three hours at the

---

2    The identity of R.C.'s father is unknown.

public library without any food or supplies. The friend was a transient and drug user who recently had lost custody of her own child through dependency proceedings.

A police officer was taking R.C. into protective custody when C.G. returned. R.C. was wrapped in a blanket without any clothes, her diaper was soiled and she had a strong body odor. The baby was very hungry and very fussy. C.G. said she left R.C. with her friend for an hour so she could sleep at Petco Park. When she returned, she searched the library but could not find her friend. The police officer believed that C.G., who appeared agitated, was under the influence of drugs.

C.G. tested clean for drugs on December 23, 2014, and January 6, 2015. She met with a social worker on January 6. The social worker reported that C.G. was dirty and disheveled. She presented as mildly intellectually delayed. C.G. was friendly and almost childlike. C.G. said some people thought she had a bipolar disorder, but she did not. She used to take lithium. The social worker offered services to C.G., who was cooperative.

R.C.'s maternal grandfather (Grandfather) said C.G. had been diagnosed with attention deficit hyperactivity disorder, posttraumatic stress disorder, emotional problems, speech problems, learning disabilities and dyslexia. She was on a waiting list for Regional Center Services. Grandfather did not believe that C.G. could parent R.C. without assistance.

The social worker met with C.G. on February 4. C.G. was clean and better dressed. She told the social worker that if she tested positive for marijuana it was because she was in the San Diego Gaslamp Quarter at 2:00 a.m. the previous night and there was a lot of marijuana smoke in the air. C.G. was participating in a parenting

4

education class. Her visits with R.C. were going well. C.G. talked to the baby and was able to make her laugh. C.G. wanted to change R.C.'s diaper even though it was not wet. She brought packages of diapers and wipes to R.C.'s foster mother. C.G. provided breast milk for the baby, but the breast pump was dirty and the milk had spoiled.

In her court report, the social worker stated it was not safe to return R.C. to C.G.'s care. C.G. had not yet demonstrated that she could properly care for the baby at all times as the primary caregiver. This included providing appropriate nourishment, warm and clean clothing, and supervision. The social worker said returning R.C. to an unchanged environment would place her at continued risk of neglect and harm.

The jurisdictional and dispositional hearing was held on February 19, 2015. The court admitted the Agency's reports in evidence. The Agency represented there were no relatives who qualified for placement of the child. C.G. did not present affirmative evidence or cross-examine the social worker. The juvenile court found that C.G. could not meet her own needs or those of her child. The juvenile court sustained the petition filed on R.C.'s behalf, removed her from her mother's custody for placement in foster care, and ordered a plan of family reunification services.

DISCUSSION

C.G. contends the juvenile court's order removing R.C. from her care is not supported by substantial evidence. She argues she had mitigated the protective risk to R.C. by the time of the dispositional hearing by completing a parenting program; testing for drugs, with no indication of drug use; moving in with Grandfather for support; cooperating with the social worker; and gaining insight into what she needed to do to

5

appropriately care for, and protect, her baby. C.G. argues that in view of her current circumstances, the Agency could put into place reasonable protective measures to prevent removal; therefore, the juvenile court unreasonably inferred R.C. would be at substantial risk of harm in her care.

A

*Statement of Law and Standard of Review*

A dependent child may not be taken from the physical custody of the parent under section 361 unless the court finds there is clear and convincing evidence that there is or would be a substantial danger to the child's physical health, safety, protection, or physical or emotional well-being if returned home, and that there are no reasonable means to protect the child's physical health without removing the child. (§ 361, subd. (c)(1).) The parent need not be dangerous and the minor need not have been actually harmed before removal is appropriate. The focus of the statute is on averting harm to the child. (*In re T.V.* (2013) 217 Cal.App.4th 126, 135-136 (*T.V.*).)

"The jurisdictional findings are prima facie evidence the minor cannot safely remain in the home." (*T.V.*, *supra*, 217 Cal.App.4th at p. 135.) In determining whether a child may be safely maintained in the parent's physical custody, the juvenile court may consider the parent's past conduct and current circumstances, and the parent's response to the conditions that gave rise to juvenile court intervention. (*In re Cole C.* (2009) 174 Cal.App.4th 900, 917 (*Cole C.*).) The juvenile court also considers whether there are any reasonable protective measures and services that can be implemented to prevent the

child's removal from the parent's physical custody.  (§ 361, subd. (c)(1); see §§ 202, subd. (a), 16500.5, 16501, 16501.1.)

In reviewing the court's findings and orders under section 361, subdivision (c), we employ the substantial evidence test, bearing in mind, however, the heightened burden of proof.  (*In re Kristin H.* (1996) 46 Cal.App.4th 1635, 1654.)  We review the trial court's findings to determine whether there is substantial evidence in the record that supports the findings.  We do not reweigh the evidence, evaluate the credibility of witnesses or resolve evidentiary conflicts.  The appellant has the burden to demonstrate there is no evidence of a sufficiently substantial nature to support the findings or orders.  (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 228.)  We draw all legitimate and reasonable inferences in support of the judgment.  (*Candari v. Los Angeles Unified School Dist.* (2011) 193 Cal.App.4th 402, 408.)

B

*There Is Substantial Evidence to Support the Removal Order*

C.G. does not meet her burden to show why the evidence on which the juvenile court relied is not of a sufficiently substantial nature.  Instead, she reargues the evidence, repeating the same arguments she made to the juvenile court.  (See *In re Michael G.* (2012) 203 Cal.App.4th 580, 584 [it is the function of the trier of fact, not the appellate court, to decide questions of fact].)  C.G. focuses her argument on her cooperative response to the social worker and her willingness to remedy the conditions that gave rise to juvenile court intervention.  (*Cole C.*, *supra*, 174 Cal.App.4th at p. 917.)  However, the juvenile court is not required to limit its consideration to the parent's response to juvenile

7

court intervention.  The court may also consider the parent's past conduct and current circumstances, as well as the child's age and ability to protect herself.  (*In re Rocco M.* (1991) 1 Cal.App.4th 814, 824 (*Rocco M.*).)

R.C. is a child of "such tender years that the absence of adequate supervision and care poses an inherent risk to [her] physical health and safety." (*Rocco M.*, *supra*, 1 Cal.App.4th at p. 824.)  The record shows that when R.C. was born, C.G. did not know how to properly care for her.  She forgot to feed the baby at night and did not respond when the baby was at risk of choking.  C.G. left R.C. for an extended period of time without any provisions for her care.  The baby was not properly fed, clothed or bathed. This was not an isolated incident.  The Agency had received other reports that C.G. left R.C., who was dirty and inappropriately dressed, in the care of drug dealers, and that C.G. allowed a person who was smoking methamphetamine to hold the baby, who almost hit the baby with the hot pipe.

Grandfather, who knew C.G.'s mental health history, said he did not believe that C.G. could take care of a child on her own.  C.G. had difficulty attending to her own needs for appropriate hygiene, mental health services and stable housing.  The social worker opined R.C. would not be safe in C.G.'s care because C.G. had not yet demonstrated that she could properly care for R.C. at all times as the primary caregiver. While the record shows that to her credit C.G. immediately engaged in services and completed a parenting class before the dispositional hearing, it also shows that C.G. was on the streets at 2:00 a.m., wanted to change the baby's diaper when it was clean and dry, and used a dirty breast pump when trying to provide breast milk for the baby.  These facts

8

in conjunction with the social worker's opinion constitute substantial evidence that there is or would be a substantial danger to the child's physical health, safety, protection, or physical or emotional well-being if returned home, and that there are no reasonable means to protect the child's physical health without removing the child. (§ 361, subd. (c)(1).)

In considering C.G.'s past conduct and current circumstances, as well as R.C.'s age and ability to protect herself (*Rocco M.*, *supra*, 1 Cal.App.4th at p. 824), the juvenile court reasonably determined that C.G.'s lack of judgment and ability to provide appropriate care and supervision placed R.C. at risk of harm, and there were no reasonable means to protect the baby's physical health without removing her from C.G.'s care. (§ 361, subd. (c)(1).) C.G. has not met her burden to show there is no evidence of a sufficiently substantial nature to support the findings and order.

## DISPOSITION

The order is affirmed.

McCONNELL, P. J.

WE CONCUR:

NARES, J.

O'ROURKE, J.

9