Filed 6/6/16  In re Julian E. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re JULIAN E., a Person Coming Under the Juvenile Court Law. | D069811 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. J519239B) |
| v. | |
| CHRISTIAN E., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Sharon L. Kalemkiarian, Judge.  Affirmed.

Suzanne Davidson, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Dana C. Shoffner, Deputy County Counsel, for Plaintiff and Respondent.

Christian E. appeals an order removing his son, Julian E., from his custody under Welfare and Institutions Code section 361, subdivision (c)(1).[1] We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Julian E. is the seven-year-old son of Christian and Shannon S. On August 24, 2015, the San Diego County Health and Human Services Agency (Agency) detained Julian in protective custody and filed a petition under section 300, subdivision (b). The petition alleged Julian had suffered, or was at risk of suffering, serious physical harm or illness as a result of unsafe living conditions and parental substance abuse.

Christian lived in a rented room in a large house. During the Agency's child welfare investigation, Christian twice refused to allow a social worker to enter the home, denying that Julian and Shannon lived at the residence. When another resident permitted police officers to enter the home, the officers confirmed that Julian and Shannon were living in the home. Conditions in the home and on the property were substandard. There were animal and human feces and urine on the floor of the home, cockroach infestations in the bedrooms and bathrooms, and spider webs stretching from floor to ceiling in a hallway. There were plates of old food covered with cockroaches in the kitchen and living room. Trash and debris were scattered throughout the house and yard. Christian and Shannon appeared to be under the influence of drugs.

---

[1] Further statutory references are to the Welfare and Institutions Code.

2

Julian's hands, legs and clothing were dirty. He could not tell the social worker the last time he had bathed. Julian had a speech impediment. He had never attended school. Although it was late afternoon, Julian had not had anything to eat that day.

The social worker asked Christian and Shannon to work with the Agency to develop a plan for Julian's safety. They did not cooperate. Christian denied using drugs but tested positive for methamphetamine on August 24. He had felony convictions for the sale of marijuana and hashish. Shannon had a significant child welfare history with her older children due to her substance abuse and mental health problems. One of Julian's half brothers was currently a juvenile court dependent.

The Agency provided a list of East County service referrals to Christian on August 20, when Julian was detained, and again on September 4. The referrals included substance abuse treatment classes, parenting classes, domestic violence classes, counseling and emergency shelters. The Agency emailed a list of TERM therapists to the parents on October 27, asking them to contact a therapist. The Agency explained that participation in services was voluntary. Christian voluntarily participated in drug tests. He tested clean five times. Christian entered substance abuse treatment on December 7, 2015. His counselor reported that Christian had excellent attendance and was "going above and beyond" in the program.

Christian and Julian had positive and loving visits several times a week. When Julian saw Christian, he ran to his father and leaped into his arms. Christian was affectionate with Julian. They were closely bonded. Christian's parenting skills were adequate. Julian missed his father very much. The Agency increased visits over the

holidays to allow full day visits on Christmas Eve, Christmas Day and New Year's Day at the paternal grandparents' home.

The jurisdictional and dispositional hearings were continued to January 15, 2016, for compliance with the Indian Child Welfare Act. The social worker reported that she visited Christian's home on October 21, 2015. The exterior grounds appeared to be cleaner. Christian's room was small but clean, but had areas of mold in it. He had to walk outside around the house to access the bathroom and kitchen. The front deck of the home had animal feces on it and a urine smell, and appeared to be decaying in places. A bathroom smelled of urine and had cockroaches, but was otherwise clean. The social worker heard rodents scurrying in the ceiling. Eight other people lived in the home, some with significant mental health problems. There were woodpiles in the backyard that would pose a risk to a child playing in the yard. Police officers said there was a history of drug sales and drug use at the house. The social worker told Christian the residence was not a suitable place for Julian. In December, Christian told the social worker he moved to a larger room in the residence with inside access to a bathroom.

The social worker recommended the juvenile court remove Julian from the custody of his parents. If Christian agreed to some parameters, the social worker would authorize unsupervised visitation between Christian and Julian. Christian's home was not suitable for Julian, and Christian did not understand how the conditions of his home presented a health and safety risk to Julian. During her investigation, the social worker learned that the home had a reputation for housing persons with mental health problems. Additionally, there was a history of drug sales in the home. In addition to the risks at his

4

residence, Christian recently began a substance abuse treatment program. He had yet to develop a relapse prevention plan, obtain a sponsor and structure a support system. Christian acknowledged he was in contact with Shannon. Shannon did not seek treatment for her long-standing substance abuse and mental health problems.

Christian asked the juvenile court to place Julian in his care. Christian acknowledged there were ongoing problems with bugs and mice in the home. He said the odors in the home were caused by a sewage pipe problem down the street. Christian testified he completed parenting classes and six drug tests. He denied being under the influence of drugs the day Julian was detained in protective custody. Christian said he had used drugs less than 10 times in the past two years. He acknowledged his home was not ideal and planned to move as soon as he could afford to do so. Christian had removed the wood piles in the yard after the social worker identified them as a risk to Julian's safety. There were elderly and disabled persons living in the home. None was dangerous. Christian did not have a romantic relationship with Shannon. His relationship with her was familial, as father and mother to Julian. Christian said Julian would not be at risk of harm in his care.

The juvenile court sustained the section 300 petition by clear and convincing evidence. It found that Shannon had a lengthy history of substance abuse and instability. As long as Christian was involved with Shannon, Julian would be at risk of harm. When Julian was detained, he had not eaten and he was dirty and inappropriately clothed. The housing conditions did not meet minimal standards of safety for a child, and the presence of mentally ill individuals increased the risk to Julian.

5

At the dispositional hearing, the juvenile court considered the strong, positive relationship between Christian and Julian, Julian's wishes, and Christian's progress with voluntary services. The juvenile court found that the conditions of Christian's residence, his history of methamphetamine use, and his relationship with Shannon presented a substantial danger to Julian's physical health, safety, protection, or physical or emotional well-being. The juvenile court removed Julian from the custody of his parents and placed him in the care of a relative.

## DISCUSSION

Christian contends the juvenile court's order removing Julian from his care is not supported by substantial evidence. He argues that by the time of the dispositional hearing, he had mitigated the protective risk to Julian by participating in voluntary services, testing negative for drugs, and improving his living conditions. Christian asserts there were reasonable alternatives to removing Julian from his care, such as providing housing assistance, implementing a safety plan and conducting unannounced visits to check on Julian's welfare.

### A

*Statement of Law and Standard of Review*

A dependent child may not be taken from the physical custody of the parent under section 361 unless the court finds there is clear and convincing evidence that there is or would be a substantial danger to the child's physical health, safety, protection, or physical or emotional well-being if returned home, and that there are no reasonable means to protect the child's physical health without removing the child (detriment finding).

6

(§ 361, subd. (c)(1).)  The parent need not be dangerous and the minor need not have been actually harmed before removal is appropriate.  The focus of the statute is on averting harm to the child.  (*In re T.V.* (2013) 217 Cal.App.4th 126, 135-136.)

"The jurisdictional findings are prima facie evidence the minor cannot safely remain in the home."  (*In re T.V.*, *supra*, 217 Cal.App.4th at p. 135.)  In determining whether a child may be safely maintained in the parent's physical custody, the juvenile court may consider the parent's past conduct and current circumstances, and the parent's response to the conditions that gave rise to juvenile court intervention.  (*In re Cole C.* (2009) 174 Cal.App.4th 900, 917.)  The juvenile court also considers whether there are any reasonable protective measures and services that can be implemented to prevent the child's removal from the parent's physical custody.  (§ 361, subd. (c)(1); see §§ 202, subd. (a), 16500.5, 16501, 16501.1.)

In reviewing the court's findings and orders under section 361, subdivision (c), we employ the substantial evidence test, bearing in mind, however, the heightened burden of proof.  (*In re Kristin H.* (1996) 46 Cal.App.4th 1635, 1654.)  We review the trial court's findings to determine whether there is substantial evidence in the record that supports the findings.  We do not reweigh the evidence, evaluate the credibility of witnesses or resolve evidentiary conflicts.  The appellant has the burden to demonstrate there is no evidence of a sufficiently substantial nature to support the findings or orders.  (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 228.)  We draw all legitimate and reasonable inferences in support of the judgment.  (*Candari v. Los Angeles Unified School Dist.* (2011) 193 Cal.App.4th 402, 408.)

B

*There Is Substantial Evidence to Support the Removal Order*

Christian does not meet his burden on appeal to show that the evidence on which the juvenile court relied is not of a sufficiently substantial nature to support the detriment finding at the dispositional hearing. The record shows that Christian exposed Julian to his own and Shannon's substance abuse, provided an unsanitary and hazardous home for him, and neglected his needs for food, adequate care, education and supervision. Despite a positive test for methamphetamine and admitted past drug use, Christian denied recent drug use. The social worker testified that Christian was doing well in substance abuse treatment, but was in the early stages of recovery. In addition, Christian did not recognize the danger presented by his home environment to Julian. Although conditions in the home were improved by the time of the dispositional hearing, they were still not suitable for a child of Julian's age.

We are not persuaded by the argument there were reasonable means to protect Julian's physical health without removing him from the home because the juvenile court could have ordered the Agency to assist Christian in finding suitable housing, implement a safety plan and make unannounced child welfare checks on Julian's behalf. (§ 361, subd. (c)(1).) This argument ignores Christian's substance abuse history, including his recent methamphetamine use. The juvenile court could reasonably conclude that Christian needed to make greater progress in substance abuse treatment before Julian could be safely returned to his care. That, alone, is sufficient to sustain a detriment finding. The record further shows that on several occasions, the social worker

8

told Christian his home was not suitable for Julian. Christian did not take any steps to locate more suitable housing for himself and Julian, and did not ask the social worker for assistance.

In considering Christian's past conduct and current circumstances, as well as Julian's age and ability to protect himself (*In re Rocco M.* (1991) 1 Cal.App.4th 814, 824), the juvenile court reasonably determined Julian was at risk of harm in Christian's care, and there were no reasonable means to protect Julian's physical health without removing him from the custody of his parents. (§ 361, subd. (c)(1).) While the record shows that Christian and Julian are very well bonded, and that Christian voluntarily participated in some of the services the Agency offered to him prior to the dispositional hearing, the juvenile court properly focused on averting any harm to Julian in removing him from substandard housing and care. (*In re T.V.*, *supra*, 217 Cal.App.4th at pp. 135-136.) We conclude that there is substantial evidence to support the juvenile court's detriment finding and removal order.

DISPOSITION

The order is affirmed.


                                                                    HUFFMAN, J.

WE CONCUR:



McCONNELL, P. J.



HALLER, J.