Filed 8/25/22  Cole v. City of L.A. CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| ONICA COLE,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>CITY OF LOS ANGELES et al.,<br><br>Defendants and Respondents. | B304028<br><br>(Los Angeles County Super. Ct. No. 19STCP00802) |

APPEAL from a judgment of the Superior Court of Los Angeles County, James C. Chalfant, Judge.  Affirmed.

Castillo Harper, Rains Lucia Stern St. Phalle & Silver, Michael A. Morguess for Plaintiff and Appellant.

Michael N. Feuer, City Attorney, Vivienne A. Swanigan, Assistant City Attorney, and Jennifer Gregg, Deputy City Attorney, for Defendants and Respondents.

Plaintiff and appellant Onica Valle Cole (Cole), a prosecutor in the Los Angeles City Attorney's Office (the Office), wanted to volunteer as a temporary judge (sometimes called a judge pro tem). She initially obtained the Office's approval do so, but a supervisor later denied her request to renew that approval because she was then on a reduced 30-hour-per-week work schedule. Though her request was denied, Cole continued to work as a temporary judge anyway. The Office terminated Cole for insubordination and other behavior, and she responded by challenging the termination via an administrative mandamus petition. The trial court upheld Cole's termination. We are asked to decide (1) whether the termination must be reversed because the Office did not offer an opportunity to administratively appeal her supervisor's denial of her request to work as a temporary judge, (2) whether she was terminated not for insubordination but for discriminatory reasons (i.e., because of her medical condition), and (3) whether termination was too severe a punishment.

## I. BACKGROUND

### A. *Pertinent Policies*

#### 1. *The memorandum of understanding*

During the relevant time period (specifically from July 1, 2016, through June 30, 2019), attorneys employed by the Office were covered by a Memorandum of Understanding (MOU) that included a grievance procedure. The MOU defined a grievance as "a dispute concerning . . . departmental rules and regulations governing personnel practices or working conditions . . . ." The MOU outlines a four-step grievance process. An employee is responsible for initiating an informal discussion of the issue with

2

her immediate supervisors, and then for serving a grievance initiation form that triggers a management review if the issue is not resolved. If the grievance is not resolved following management review, the employee may pursue a written appeal to the City Attorney. And if that does not resolve the issue, the Los Angeles City Attorneys Association, which represents attorney employees, may make a written request for arbitration.

### 2. *The outside employment memorandum*

In January 2016, the City Attorney's Chief of Staff, Leela Kapur (Kapur), distributed a memorandum advising employees they were required to obtain written approval from the City Attorney before accepting outside employment, including volunteer work for which they receive no payment. The memo specifically identified service as a judge pro tem as a form of volunteer work that required approval. The memo stated an employee must first submit a request to his or her supervisor and Branch Chief for approval, after which Kapur would review the request. The memo also cautioned an employee should not accept outside employment until he or she received a signed copy of an approval form from Human Resources. The memo further stated all approved requests must be renewed on an annual basis by submitting a new approval form.

### B. *Cole's Employment and Termination*

Cole began working as a Deputy City Attorney for the Office in 2002. In 2009 she was assigned to the Consumer Fraud and Workforce Protection Unit (the unit), which is where she worked almost exclusively for the remainder of her employment.

*1. Cole obtains approval to volunteer as a judge pro tem in 2016*

In February 2016, Cole submitted an outside employment approval form seeking permission to volunteer as a temporary judge for the period beginning February 18, 2016, and ending February 18, 2017. The form stated Cole would not be volunteering during city time. The request was approved, with the caveat that Cole must obtain pre-approval from her supervisor one week before serving as a judge pro tem to attempt to avoid any interference with her work duties.[1] The approval was signed by Cole's supervisor (Austin); by Chief of the Criminal Branch, Mary Clare Molidor (Molidor); and by Chief of Staff Kapur. Cole first served as a temporary judge on March 17, 2016, which was after Austin had approved her request but before the request had been approved by Molidor or Kapur.

In November 2016, Austin approved a request from Cole to volunteer as a temporary judge in the afternoon on December 30, 2016. His approval email warned Cole, however, that she could not engage in outside employment more than once per month, beginning January 2017, because of the unit's operational needs.

---

[1] Such interference was not always avoided. On one occasion in 2016, Cole's direct supervisor, Travis Austin (Austin), had to make a court appearance for Cole while she was serving as a judge pro tem. On that occasion, Cole asked Austin to move to continue a case that could be set for trial that day. Austin considered this an imposition because it took time away from his own cases.

4

### 2. *Cole's 2017 request to renew her approval is denied*

In or around late January 2017, Cole was placed on a reduced work schedule for medical reasons; under the reduced schedule, Cole was to work only 30 hours per week.[2]

On February 15, 2017 (three days before her prior outside employment approval was to expire), Cole submitted a new outside employment approval form. The start and end dates were listed as "continuous." Before receiving a response to her renewed outside employment request, Cole asked Austin for approval to serve as a temporary judge in the afternoon on March 2, and in the morning on March 14 and March 30. Austin replied he could not approve the request and reminded Cole she was limited to one instance of outside employment per month because of the operational needs of the Consumer Section. Austin asked her to choose one date in March that did not negatively impact her duties and resubmit her request. Cole objected and opined there was no longer an operational need in the unit that should restrict her outside employment; as Cole saw it, Austin's response to her outside employment approval request was retaliatory and inappropriate. Cole told Austin she would discuss the issue directly with Molidor.

Molidor emailed Austin later the same day and informed him she would be meeting with Cole the following Monday to discuss her request. Molidor wrote she was disinclined to

---

[2]    Neither the record nor Cole's briefs on appeal precisely identify the medical condition with which she was diagnosed. There are some references to physical symptoms including leg and foot pain, but, as we will explain, Cole was also under the care of a psychiatrist.

approve the request and wondered how Cole had time to serve as a judge pro tem when she was unable to work 40 hours a week for the Office.

Kapur denied Cole's request for approval to volunteer as a temporary judge in February 2017 via a handwritten notation on an outside employment request form. According to the notation, Cole's request was denied because she was on a 30-hour per week schedule pursuant to a medical directive, her reduced work schedule was causing hardship to her unit, and additional time away from the office was not feasible given the unit's demands.

### 3. Cole resubmits her 2017 request and volunteers as a pro tem

On March 3, 2017, Cole submitted another outside employment approval form with a note at the top stating "[n]o daytime hours if working less than fulltime." Three days later, Cole served as a temporary judge at night court in Pasadena.

The following day, on March 7, 2017, Austin issued Cole a Notice to Correct Deficiencies following an investigation of an immigration fraud case that had been initiated in April 2016. The notice stated it was being issued based on Cole's "failure to follow specific instructions from management" and described several instances of the same. Among those instances was the aforementioned occasion in December 2016 when "contrary to the outside employment protocols" Cole served as a temporary judge the same morning she was scheduled to appear in court because her case could be set for trial—forcing Austin to appear on her behalf.

Cole met with Molidor to discuss the Notice to Correct Deficiencies the same day it was issued to her. During that

meeting, Cole did not mention she had served as a temporary judge without approval the prior evening.

Cole initiated a grievance process in response to the notice to correct deficiencies.[3] Later the same month, Cole's work schedule was reduced further, to 20 hours per week. The additional reduction was predicated on written instructions from a psychiatrist, Dr. Joel Miller, who stated Cole could perform routine job functions, but for no more than four hours per day, for the period from March 24, 2017, to May 8, 2017. Dr. Miller also specified Cole would be participating in outpatient treatment from 9 a.m. to 2 p.m. daily. Cole later provided a note from Dr. Miller to Cristina Sarabia (Sarabia), the Office's Human Resources Director, which extended her four-hour-a-day work restriction through June 19, 2017.[4]

In April 2017, Cole emailed Austin to ask if he had reconsidered her request to serve as a temporary judge after hours, or on dates and times she was not scheduled to work. She also asked whether temporary judge assignments outside of the City of Los Angeles required approval. Vivienne Swanigan, the Managing Assistant City Attorney of the Labor Relations Division, who was copied on the email, responded that all outside

---

[3] The Office ultimately denied the grievance in January 2018 because Cole refused to meet telephonically and did not take further action to meet when she was on active work duty.

[4] In different handwriting, the note also stated: "Attend ongoing therapy MTThF 9-2pm." Sarabia noted the difference in handwriting and called Dr. Miller. According to Sarabia's notes of that call, Dr. Miller chuckled and said he did not write that. Cole later admitted to writing the therapy language, as well as other language on the note.

7

employment required approval. Several days later, Cole asked for an update on whether the Office had reconsidered her request to serve as a temporary judge outside of the City of Los Angeles. The following day, Tina Hess, the Deputy Chief of the Special Litigation Division, asked Cole to submit a new written request.[5]

In the meantime, Swanigan became aware that Cole—who was running for election to be a superior court judge—was regularly appearing as a volunteer judge without approval. In addition to working as a temporary judge on the evening of March 6, 2017, Cole had also served as a temporary judge on the mornings of May 30, 2017, and June 1, 2017. At the conclusion of her shift as a temporary judge on the morning of June 1, Cole sent an email to an Office human resources employee that advised she was not feeling well and would not be at work that day "Due to Workplace Injury."

### 4. *The notice of proposed termination*

The Office served Cole with a Notice of Proposed Termination in September 2017. The Notice outlined four charges against Cole, asserted Cole's conduct failed to meet the high standards expected of an attorney working as a criminal prosecutor in the Office, and stated the seriousness of the offenses and surrounding circumstances warranted immediate termination. Charge one was for fraud, dishonesty, or falsification of records in connection with Cole's act of submitting

---

[5] Months later, in September 2017, the Office would update its outside employment approval request form so it states authorization for outside employment is suspended during any leave under the Family and Medical Leave Act (FMLA) or personal medical leave.

8

the May 26, 2017, note from Dr. Miller with "falsified (altered) information," namely the statement regarding ongoing therapy that Cole wrote on the note. Charge two was for insubordination in connection with Cole's unauthorized service as a judge pro tem on multiple occasions after her request for approval was denied. (The charge specifically referenced Cole's service on three occasions in March, May, and June 2017, as well as her statement that she was unable to go to work on June 1, 2017, because she had ostensibly suffered a workplace injury.) Charge three was for improper behavior in connection with race-based statements Cole made to victims whose case she was prosecuting.[6] Charge four was for misconduct, specifically, Cole's reference to her unauthorized temporary judge volunteering on a campaign website promoting her run for superior court judge.

> 5. *The* Skelly[7] *hearing and notice of termination*

Deborah Caruso (Caruso), a Personnel Director in the Office, convened a *Skelly* meeting for Cole in November 2017.

---

[6] On May 23, 2017, an employee of the Office's Human Resources Department submitted a memo regarding the results of an investigation into allegations Cole made inappropriate race-based statements. The investigation found that on April 6, 2017, Cole said words to the effect of, "We all share the same skin color, this dark beautiful dark brown skin" to victims she was representing in litigation. Cole was also reported to have referred to other colleagues as "lazy White attorneys in the office who don't work too hard."

[7] "*Skelly* hearing" refers to the administrative hearing required by *Skelly v. State Personnel Board* (1975) 15 Cal.3d 194 (*Skelly*), a case that holds a permanent civil service employee has

9

Cole acknowledged her initial 2017 request for outside employment had been denied, but she argued her doctor's restrictions that allowed her to work on volunteer assignments, including the temporary judge program, sufficed as permission to engage in outside employment. Cole admitted to working as a temporary judge on May 30 and June 1, 2017. She asserted the allegations in the termination notice she received were retaliatory.

Caruso prepared a memo after the *Skelly* meeting. It identified the penalty range for the charges brought against Cole (which would be her first offense(s)) ranged from a six-day suspension up to discharge from employment. Caruso recommended termination of Cole's employment based on her misconduct, including insubordination.

The Office issued Cole a notice of termination in January 2018. The notice stated Cole's employment was terminated based, both collectively and individually, on the charges that she worked as a temporary judge without approval, falsified or altered a doctor's note, and falsely claimed sick time while working as a temporary judge.[8]

---

a property interest in continued employment that is protected by due process.

[8] The notice also concluded that a written warning regarding the alleged inappropriate race-based statements was the appropriate penalty.

C.     *The Administrative Appeal*

Cole appealed her termination pursuant to Los Angeles City Charter section 1050(b) and Rule 1, Section 1.2 of the Rules Regarding Job Protection.[9]

An evidentiary hearing was held in late August and early September 2018.  The parties stipulated that the issues to be decided were (1) whether there was good cause for Cole's termination and (2) if not, what the appropriate remedy would be.  Among the testifying witnesses were Austin, Cole, Molidor, and Kapur.

Austin explained the unit to which Cole was assigned was a vertical prosecution unit.  That meant the same prosecutor was assigned a particular case from start to finish, i.e., from making the initial filing decision to handling the appeal.  Austin discussed the day he appeared in court in Cole's stead while she was volunteering as a pro tem judge and explained covering the hearing was an imposition because it took time away from his own caseload and responsibilities.

Cole, during her testimony, admitted to working as a temporary judge on March 6, May 30, and June 1, 2017.  Cole also admitted to knowing that permission allowing outside

---

[9]     Rule 1, Section 1.1 provides the City Attorney may discharge an employee for good cause.  Cole appealed the termination pursuant to City Charter section 1050 and Rule 1, Section 1.2 of the Rules Regarding Job Protection.  Rule 1, Section 1.5 provides for a fair and impartial hearing before a trier of fact to determine whether good cause exists for the action of the City Attorney.  Section 1.8 provides the decision of the trier of fact shall be final and binding on the parties, except that either party may seek judicial review.

employment was for a one-year time period and needed to be renewed on an annual basis. She also understood the 2017 form with Kapur's note on it denied her recertification of permission to work as a judge pro tem.

Molidor acknowledged temporary judge service is an important public service, but she testified that when an attorney volunteers as a judge pro tem, they are essentially gone for the day when you consider travel time. Molidor understood that if Cole was limited to 30 hours per week of work and was approved for a temporary judge assignment she would work less than 30 hours in the office. She wondered why Cole was on a restricted work schedule if she was well enough to work 30 hours in the office and 10 hours as a pro tem. Molidor stated the Office does everything they can to accommodate people for family and medical reasons, but taking additional time away from Cole's 30-hour per week schedule would prohibit the unit where Cole worked from functioning correctly.[10] Molidor was also very concerned by the realization that Cole served as a judge pro tem on March 6, 2017, met with Molidor the following day, and did not disclose her judge pro tem work the previous day.

Kapur testified that prosecuting employees were held to the highest standard of integrity. She further explained she denied Cole's outside employment request because she was on a restricted work schedule. Kapur said what the Office needed was for Cole to be in the office helping them fulfill their responsibilities when she was capable and medically cleared to work, rather than spending time serving as a judge pro tem.

---

[10]    Molidor explained the unit Cole worked in was small and was backed up with hundreds of requests for filing.

12

Dr. Miller did not testify during the administrative appeal proceedings, but he did submit a declaration attaching two exhibits. The declaration averred that one of the exhibits was a handwritten note he drafted "on or about April 26, 2017, in which [he] advised that . . . Cole should continue to participate in her volunteer roles as a judge and at Sunday School as part of her therapy." The declaration does not specify who Dr. Miller advised and the exhibit is nearly an entirely blank sheet of paper on which handwritten words volunteer for judge and Sunday school are legible but there is no intelligible context.

The hearing officer found the evidence established Cole's insubordination with respect to her time volunteering as a temporary judge. The hearing officer found Cole knew she was required to obtain approval to volunteer as a temporary judge, she understood she was required to obtain Austin's consent prior to agreeing to specific assignments, and she requested permission to work as a temporary judge on multiple dates in March. The officer further found Cole served as a temporary judge on March 6, May 30, and June 1, 2017, even though Austin denied the request to work as a temporary judge in March 2017 and the Office denied her overall request to perform outside employment. The hearing officer concluded the City had met its burden of proving insubordination and determined Cole's single act of insubordination by serving as a temporary judge on March 6 was sufficient by itself to warrant termination.[11]

---

[11] The hearing officer was not persuaded that Dr. Miller's declaration provided mitigation for Cole's conduct because she served as a temporary judge on March 6 (i.e., before the April 26, 2017, note) and because the note was only an opinion that Cole

13

The hearing officer also rejected Cole's affirmative defense of retaliation based on a medical condition. The officer concluded Cole had not adduced any evidence supporting the claim and additionally reasoned that her belief that a retaliatory motive was afoot would not have justified her insubordination. The hearing officer further reasoned Cole had been receiving an accommodation for her medical condition since 2014, which did not support the claim that the City took adverse actions as the result of Cole's need for accommodation.

### D. Cole's Administrative Mandamus Petition

Cole filed a petition for writ of administrative mandamus naming defendants and respondents City of Los Angeles and Guy Prihar (the administrative appeal hearing officer). The petition alleged, in short, that the hearing officer's decision was invalid, that the decision was not supported by the findings, and that the penalty of termination was excessive and an abuse of discretion. Cole asked the trial court to issue a writ compelling the Office to set aside its findings and decision terminating Cole; to restore her to full back pay, seniority, and rank; and to remove any references to discipline from her file.

Cole argued the finding of insubordination was not supported by the weight of the evidence because the City gave Cole the "run-around" when she tried to accommodate the concerns that led to the denial of her request and because the City did not have a specific procedure in place to appeal the denial of her request as required by Government Code section

would benefit from volunteering as a judge, not a direction from Dr. Miller that Cole engage in such volunteering.

14

1126.[12] She further argued the City discriminated against her based on her medical leave and the decision to terminate her was an abuse of discretion. The trial court rejected all three arguments and denied the petition.

The court found Cole had no approval to work as a temporary judge on March 6, she read and understood the denial of her outside employment approval request prior to March 6, and she served as a temporary judge anyway on that date and on May 30 and June 1, 2017 (including during daytime hours, which was inconsistent with her notation on her resubmitted approval request that she sought approval for only evening work). The court determined Cole's section 1126 argument was a procedural issue that did not justify Cole's insubordination. As the trial court reasoned, Cole could not simply ignore the Office's denial of her outside employment approval request; she should have contested the procedure administratively or sought judicial review if she believed the procedure was inadequate.

The court further found the record did not support Cole's contention that her termination was motivated by discrimination based on her medical condition. The court explained Cole was hired as a full-time prosecutor. Outside employment was not within the scope of her job and was subject to the Office's

---

[12] In pertinent part, the statute provides a "local agency shall adopt rules governing the application of this section. The rules shall include provision for notice to employees of the determination of prohibited activities, of disciplinary action to be taken against employees for engaging in prohibited activities, and for appeal by employees from such a determination and from its application to an employee." (Gov. Code, § 1126, subd. (c).)

Undesignated statutory references that follow are to the Government Code.

discretionary approval. There was evidence her pro tem judging interfered with Cole's work duties and Austin and Molidor were concerned about the impact of Cole's judge pro tem activities on her unit. Kapur denied Cole's request for outside employment because Cole's working hours were limited to 30 hours per week and additional time away was not feasible given the unit's work demands. The court deemed these legitimate, non-discriminatory reasons for denial. The court also determined there was nothing unlawfully discriminatory about the reasoning, later turned into policy, that an employee who has shortened work hours for medical reasons may not engage in outside employment. The court found this particularly supportable for a Deputy City Attorney volunteering as a judge pro tem because both involve legal work.

Finally, the trial court determined the penalty imposed, discharge, was not a manifest abuse of discretion. The court acknowledged that the City operates under a policy of progressive discipline, and the only arguable progressive discipline imposed before Cole's termination was the issuance of the notice to correct deficiencies. The court also recognized Cole's insubordination involved outside employment and there was no evidence her three acts of insubordination resulted in any actual harm to the public service. The court found, however, that Cole's status as a lawyer and prosecutor worked against her, stating the public service is undermined when an employee disobeys a lawful order. Kapur and Molidor testified prosecutors are held to the highest ethical standards and the Office cannot have a prosecutor who deliberately violated an order. The court acknowledged Cole tried to work within the system by resubmitting her request, but it also stated she ultimately ignored the denial. The court also

16

stated the likelihood of recurrence favored the City, as Cole deliberately violated the denial of her request on three occasions, two of which occurred after her receipt of a notice to correct deficiencies. The court found that in accordance with the disciplinary guidelines and due to the higher standard of behavior imposed on Cole as a lawyer and a prosecutor, the hearing officer did not manifestly abuse his discretion by affirming the penalty of discharge.[13]

## II. DISCUSSION

The trial court did not err. Cole's argument that defendants did not strictly comply with section 1126, subdivision (c) does not undermine the termination decision because the Office's existing grievance procedure satisfies the statute's requirement for a mechanism to appeal outside employment approval determinations and the statute in any event is directory, not mandatory. Cole's argument that her discharge was motivated by unlawful discrimination fails because substantial evidence supports the trial court's finding that Cole's request was denied for legitimate, nondiscriminatory reasons. Finally, because termination was within the range of punishments for a single act of insubordination and Cole committed three such acts, substantial evidence also supports the

---

[13] The trial judge said he personally would not have discharged Cole under the facts, but stated he could not substitute his discretion for that of the City Attorney where reasonable minds can differ. The disciplinary standards allowed termination for a single offense of insubordination, and Cole engaged in insubordinate conduct on three occasions.

17

trial court's finding that her termination was not a manifest abuse of discretion.

### A.    *Standard of Review*

Code of Civil Procedure section 1094.5 governs judicial review of a final administrative decision.  "'[D]iscipline imposed on public employees affects their fundamental vested right in employment,' and therefore, when a public employee challenges an employer's disciplinary action in a mandamus proceeding, the trial court is required to exercise its independent judgment on the evidence.  [Citations.]" (*Wences v. City of Los Angeles* (2009) 177 Cal.App.4th 305, 314; accord, *Strumsky v. San Diego Cty. Employees Retire. Ass'n.* (1974) 11 Cal.3d 28, 44.)

"The independent judgment test required the trial court to not only examine the administrative record for errors of law, but also exercise its independent judgment upon the evidence in a limited trial de novo.  [Citation.]  The trial court was permitted to draw its own reasonable inferences from the evidence and make its own credibility determinations.  [Citation.]  At the same time, it had to afford a strong presumption of correctness to the administrative findings and require the challenging party to demonstrate that such findings were contrary to the weight of the evidence.  [Citation.]" (*Candari v. Los Angeles Unified School Dist.* (2011) 193 Cal.App.4th 402, 407 (*Candari*).)

On appeal, we review the record to determine whether the trial court's findings (not those of the administrative agency) are supported by substantial evidence.  (*Candari, supra,* 193 Cal.App.4th at 407-408.)  "We resolve all evidentiary conflicts and draw all legitimate and reasonable inferences in favor of the trial court's decision.  [Citation.]  'Where the evidence supports more

18

than one reasonable inference, we are not at liberty to substitute our deductions for those of the trial court.' [Citation.]" (*Id.* at 408.)  Statutory interpretation questions, however, are resolved de novo.  (*Lopez v. Ledesma* (2022) 12 Cal.5th 848, 857.)

> ### B.     Cole Disobeyed a Valid Direction Not to Volunteer as a Temporary Judge

The trial court affirmed the hearing officer's decision that upheld Cole's discharge for insubordination based on her acts of volunteering as a pro tem judge three times after receiving a denial of her request for approval to do so. The Policies of the Personnel Department of the City of Los Angeles specify that the "[r]efusal to perform reasonable work assignments or to cooperate with supervisors or management in the performance of duties" is insubordination.  "Insubordination can be rightfully predicated only upon a refusal to obey some order which a superior officer is entitled to give and entitled to have obeyed." (*Parrish v. Civil Service Com'n of County of Alameda* (1967) 66 Cal.2d 260, 264.)

Cole does not challenge the substantiality of the evidence regarding her own actions.  Indeed, she could not—the evidence firmly establishes she knew she was required to obtain approval in order to volunteer as a judge pro tem, knew her request for approval in 2017 had been denied, and volunteered as a judge pro tem three times despite the denial.

Cole instead focuses on the Office's decision to deny her outside employment approval request in 2017.  She argues the decision is infirm because defendants' outside employment approval policy does not comply with section 1126, subdivision (c) because it does not explain how an employee may appeal a refusal to authorize outside employment.  In Cole's view, she

19

cannot be found insubordinate for contravening a decision made pursuant to a statutorily noncompliant policy.

Our assessment of the merits of this argument naturally begins with the text of section 1126.  The statute generally prohibits public employees from engaging "in any employment, activity, or enterprise for compensation which is inconsistent, incompatible, in conflict with, or inimical to his or her duties as a local agency officer or employee or with the duties, functions, or responsibilities of his or her appointing power or the agency by which he or she is employed."  (§ 1126, subd. (a).)  The key provision of the statute for our purposes is subdivision (c), which we already quoted in the margin.  It states in pertinent part that "[t]he local agency shall adopt rules governing the application of this section.  The rules shall include provision for notice to employees of the determination of prohibited activities, of disciplinary action to be taken against employees for engaging in prohibited activities, and for appeal by employees from such a determination and from its application to an employee."[14] (§ 1126, subd. (c).)

In our view, the existence of the Office's grievance procedure, outlined in the MOU that covers attorneys employed by the Office (and summarized at the outset of this opinion), suffices to comply with section 1126, subdivision (c)'s requirement of provision for appeal by employees of the Office's outside

---

[14]  Cole appears to read section 1126, subdivision (c) to say the rules must include provision "for notice . . . for appeal" rather than to say "provision . . . for appeal . . . ."  This is an awkward reading of the language, and we are unpersuaded that it is the correct one.  We need not resolve this issue, however, because we would reach the same conclusion under either construction.

20

employment determinations.  Nothing in the statute requires a local agency's "rules" to appear all in one self-contained document.  It is also undisputed that Cole was aware of both the outside employment memorandum and the grievance procedure described in the MOU; indeed, the record reveals Cole availed herself of both (she invoked the grievance procedure in connection with the Notice to Correct Deficiencies that in one respect involved a problem arising from her temporary judge volunteerism).  Further, the MOU's grievance process permits an attorney employee to address "a dispute concerning . . . departmental rules and regulations governing personnel practices or working conditions" and the Office's outside employment policy governs "personnel practices" related to employees' outside activities that might pose a conflict of interest.  Though the MOU does not specifically reference the outside employment policy, its grievance process is broadly framed such that it covers conflicts over that process and it is obvious Cole could have invoked it—certainly when the record reveals she was not shy about challenging actions taken by Office management when she disagreed with those actions.

Moreover, even if section 1126, subdivision (c) were read to require a full description of an appeal procedure (or at least an express cross-reference to an already existing appeal procedure) in the same document that sets a local agency's rules on outside employment, Cole still would not be entitled to reversal.  That is so because such a statutory requirement must be read as only directory (not mandatory).

"Whether a requirement is mandatory or directory is determined largely by its effect:  'If the failure to comply with a particular procedural step does not invalidate the action

21

ultimately taken[,] . . . the procedural requirement is referred to as "directory." If, on the other hand, it is concluded that noncompliance does invalidate subsequent action, the requirement is deemed "mandatory." [Citation.]' [Citations.]"[15] (*Kabran v. Sharp Memorial Hosp.* (2017) 2 Cal.5th 330, 340, first alteration added.) "'Whether a particular statute is intended to impose a mandatory duty is a question of interpretation for the courts.' [Citation.]" (*People v. Allen* (2007) 42 Cal.4th 91, 101-102.)

"The paramount consideration [in determining whether a statute is mandatory or directory] is the objective of the statute." (*Downtown Palo Alto Com. for Fair Assessment v. City Council* (1986) 180 Cal.App.3d 384, 395.) "If [an] element is essential to promote the statutory design, it is 'mandatory' and less than full compliance is not acceptable. [Citation.] If not, it is 'directory.' [Citation.] 'If a statutory directive does not go to "'the essence' of the particular object sought to be obtained, or the purpose to be accomplished" and a "departure from the statute will cause no injury to any person affected by it," the provision will be deemed directory.' [Citation.]" (*Manderson-Saleh v. Regents of University of California* (2021) 60 Cal.App.5th 674, 703-704; see also *Coastside Fishing Club v. California Fish & Game Com.* (2013) 215 Cal.App.4th 397, 425 ["[I]n the absence of prejudice, lack of

---

[15] This is distinct from another possible meaning of "mandatory," one that "refers to an obligatory duty which a governmental entity is required to perform, as opposed to a permissive power which a governmental entity may exercise or not as it chooses." (*Morris v. County of Marin* (1977) 18 Cal.3d 901, 908-911.)

22

strict compliance with a statute does not render subsequent proceedings void"] (*Coastside Fishing*).)

Subdivision (c) provides an agency's rules "shall" include the relevant provisions, but "[t]he word 'shall' in a statute does not necessarily denote a mandatory requirement; it may be construed as directory . . . ." (*Coastside Fishing*, *supra*, 215 Cal.App.4th at 425.)[16] More importantly, the language of section 1126 does not establish or indicate there is any penalty or remedy for noncompliance with subdivision (c). "'When a statute does not provide any consequence for noncompliance, the language should be considered directory rather than mandatory.'" (*Ibid*.) That is true of section 1126, subdivision (c).

Cole argues otherwise, relying in part on *Mazzola v. City and County of San Francisco* (1980) 112 Cal.App.3d 141 (*Mazzola*) for the proposition that section 1126 is not "self-executing." *Mazzola* held an agency must provide notice to an employee that a conflict of interest exists before charging an employee with its violation. (*Id*. at 154.) It further stated, "[n]otice should also be provided to the employee with regard to the agency's intended disciplinary action, as well as provisions for appeal from the agency's determination." (*Id*. at 154.) *Mazzola* does not address the mandatory versus directory distinction. Nor does it support holding the Office's actions invalid here, where a

---

[16] Section 14, which governs the construction of the Government Code generally, provides that "'[s]hall' is mandatory and 'may' is permissive." Juxtaposing mandatory with "permissive" rather than "directory" suggests the Legislature was indicating how the word should be used in an analysis of whether a term is obligatory rather than permissive, not whether it is mandatory or directory.

general grievance procedure applicable to many personnel issues was an available appeal mechanism and Cole was aware of the procedure.

Additionally, there is no evidence in the record indicating a different result would have been probable if Cole had initiated a grievance or been given an alternate route for appeal. To the contrary, the record indicates the City Attorney amended the Office's general policy to specifically provide outside employment would not be authorized while employees were on FMLA or personal medical leave.

Finally, Cole's complaint that the grievance procedure is deficient because it does not address what happens to a request for outside employment pending an appeal is unpersuasive. The outside employment policy stated an employee should not accept outside employment until he or she received a signed copy of the approval form from Human Resources. As there would be no signed copy of approval during the pendency of the grievance process, the policy provides the employee would not be permitted to engage in outside employment during that time.

C.     *Substantial Evidence Supports the Trial Court's Resolution of Cole's Discrimination Claim*

Cole contends she was not bound to comply with the Office's denial of her request for outside employment because it was based on discriminatory reasons, namely doubt regarding her medical condition. Assuming without deciding that a discriminatory motivation would have excused her compliance with the order, Cole's argument is still unpersuasive.

Substantial evidence supports the trial court's determination that the denial was based on legitimate,

24

nondiscriminatory reasons.[17] Cole was a Deputy City Attorney in a vertical prosecution unit, meaning she handled her cases from inception to completion. If other matters kept her out of the office—and out of court—others in her unit were forced to cover for her. Cole's volunteer work as a judge pro tem impacted her performance at work and impacted the business operations of her unit. In December 2016, Cole volunteered as a judge pro tem on the same day she was scheduled for trial in a matter. As a result of her unavailability, her supervisor, Austin, was required to appear in court on her behalf. Her pro tem service thus disrupted not only her own work, but also Austin's.

When Cole sought permission to renew her approval for outside employment, she was working on a reduced schedule. By that time, Austin had already informed her she would be limited to one volunteer session per month due to the operational needs of the section. According to Molidor's testimony at the hearing, Cole's unit had a significant backlog at the time of her 2017 request. Molidor also testified that participation in pro tem judging was time consuming (with travel time, usually an all-day affair) and would likely limit Cole's available working hours further. This is substantial evidence the operational needs of the unit were, in fact, such that additional time taken from Cole's already limited work schedule would be detrimental to the unit's operation.

---

[17] Cole contends we may exercise our independent judgment in deciding this issue. The case law she cites in support of that claim, however, does not support the proposition. We see no reason a different standard of review would apply.

Cole argues these stated concerns are inconsistent with Molidor questioning how Cole could have time to be a judge pro tem if she were unable to work 40 hours per week for the Office, and with Kapur testifying Cole should be devoting her time to the office if she is capable of working, medically cleared, or medically able to work. She contends the true reason for the denial was doubt regarding the medical basis underlying her leave. Read in full context, however, these statements merely communicate a belief that an employee on a reduced work schedule for medical reasons should be required to spend the time they are permitted to and capable of working doing their job, and should not be allowed to engage in outside employment. This is especially true here, where the outside employment so closely mirrored Cole's actual employment (both involve litigation in court). This belief does not express doubt regarding the basis for or validity of Cole's medical leave.

Cole seems to contend the Office's position was that if an employee could work 30 hours, the remainder of their time should be devoted to work "in disregard of her medical leave and reduced hours." This misinterprets the position. The Office was not attempting to disregard Cole's medical leave. Cole could have spent her medical leave time engaged in therapy, hobbies, or other activities. The Office merely, and reasonably, disagreed with Cole's position that she could pursue other employment, expressly defined by the Office's policy to include judge pro tem work, during her medical leave time.[18]

---

[18] Though it was not addressed in the Office's policy or denial of Cole's request, it is reasonable to infer that service as a judge pro tem when working on a reduced schedule "involves the time demands as would render performance of [the employee's] duties

26

### D. Cole's Termination Was Not a Manifest Abuse of Discretion

"The propriety of a penalty imposed by an administrative agency is a matter vested in the discretion of the agency, and its decision may not be disturbed unless there has been a manifest abuse of discretion." (*Lake v. Civil Service Commission* (1975) 47 Cal.App.3d 224, 228.) "[I]t is well settled that in reviewing the penalty imposed by an administrative body, neither a trial court nor an appellate court is free to substitute its own discretion as to the matter." (*Nightingale v. State Personnel Board* (1972) 7 Cal.3d 507, 515.) "In considering whether such abuse occurred in the context of public employee discipline, we note that the overriding consideration in these cases is the extent to which the employee's conduct resulted in, or if repeated is likely to result in, '[h]arm to the public service.' [Citations.] Other relevant factors include the circumstances surrounding the misconduct and the likelihood of its recurrence." (*Skelly, supra*, 15 Cal.3d at 218.)

"It is . . . essential to the public service that its employees obey all *lawful orders* given them in the course of their employment." (*Belmont v. State Personnel Bd.* (1974) 36 Cal.App.3d 518, 523.) "In weighing these factors, we may consider the nature of the profession in issue, since some occupations such as law enforcement, carry responsibilities and limitations on personal freedom not imposed on those in other fields." (*Thompson v. State Personnel Bd.* (1988) 201 Cal.App.3d

---

as a local agency officer or employee less efficient" (§ 1126, subd. (b)) and was thus precisely the sort of activity section 1126 contemplates prohibiting.

27

423, 429; accord, *Anderson v. State Personnel Bd.* (1987) 194 Cal.App.3d 761, 771.)

The trial court found Cole's termination was not a manifest abuse of discretion based on the City's disciplinary guidelines and the nature of Cole's profession. The court also indicated the likelihood that Cole's insubordinate behavior would recur favored the City's action. Substantial evidence supports the trial court's determination.

The Policies of the Personnel Department of the City of Los Angeles provide that a single act of insubordination is punishable by a range of options, from a six-day suspension to discharge. The suggested punishment for a second act of insubordination is discharge. Cole volunteered as a judge pro tem three times without any authorization from the City Attorney, and with full knowledge her request to volunteer as a judge pro tem had been denied. Because we have previously concluded substantial evidence supports the trial court's ruling this constituted insubordination, the three instances combined more than meet the threshold for termination under the City's policies.

It is true, as the trial court noted, that there is no evidence Cole's insubordination resulted in a specific, quantifiable harm to the public service, but the very nature of her profession nevertheless supports an inference of harm. Kapur and Molidor testified that prosecutors are held to the highest ethical standards, and the Office did not feel comfortable with Cole continuing to serve as a prosecutor. There is no question Cole was aware her request had been denied when she volunteered each of the three times. Her deliberate disregard of the determination itself constitutes a sufficient adverse effect on public service, including by undermining the City Attorney's

confidence in her ability to follow lawful instructions in serving the public.

Cole argues her volunteering as a judge pro tem was, to the contrary, itself in furtherance of public service. While volunteers who serve as pro tem judges in normal circumstances do indeed serve the public, the same cannot be said here, where a prosecutor knowingly defied a direct order to volunteer as a temporary judge. Cole also contends her volunteering did not result in activities in conflict with her duties as a prosecutor. However, it is clear her volunteering directly interfered with her execution of her duties at least once, in December 2016, when she volunteered as a judge pro tem on a morning on which she was scheduled to appear in court.

There was also substantial evidence suggesting a likelihood of recurrence. Cole served as a pro tem three times after her request to do so was denied. Even if Cole could justify her volunteer session on March 6 by arguing she believed it was possible the Office would reverse its denial of her request, the Office's refusal to so reverse itself over the ensuing months demonstrates Cole could not have reasonably been under such a misimpression when she attended her subsequent temporary judge volunteer sessions. Further, nothing in the record suggests Cole took responsibility for her actions or understood why they were problematic. Having thrice demonstrated her belief that her interest in volunteering as a judge pro tem was more important than her obligation to follow orders issued by her employer, it is reasonable to conclude she would continue acting in that manner in the future.

Cole also suggests that she was barred from all volunteer work "beneficial to her psyche." This is not supported by the

record, which indicates only that she was barred from service as a judge pro tem, a position the Office specifically identified as volunteer service requiring prior approval.  Nothing in the record indicates the Office would, or could, have prevented her from volunteering as a Sunday school teacher.

DISPOSITION

The judgment is affirmed.  The City shall recover its costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


BAKER, J.

We concur:


RUBIN, P. J.


MOOR, J.